**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD E. GROFF,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **CIVIL ACTION NO.** |
| | **:** | **19-CV-1879** |
| | **:** | |
| **MEGAN J. BRENNAN,** | **:** | |
| **POSTMASTER GENERAL,** | **:** | |
| **UNITED STATES** | **:** | |
| **POSTAL SERVICE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2020, upon consideration of the

defendant's motion for summary judgment, the supporting memorandum of law, the defendant's

statement of undisputed materials facts, and any response thereto, it is hereby ORDERED that

the motion is GRANTED.  Judgment is granted for the defendant on both claims in the plaintiff's

complaint.


BY THE COURT:


_____

JEFFREY J. SCHMEHL, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD E. GROFF,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **19-CV-1879** |
| | : | |
| **MEGAN J. BRENNAN,** | : | |
| **POSTMASTER GENERAL,** | : | |
| **UNITED STATES** | : | |
| **POSTAL SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Megan J. Brennan, Postmaster General of the United States Postal Service, by and

through her counsel, respectfully requests that the Court grant summary judgment in her favor

pursuant to Federal Rule of Civil Procedure 56.  The grounds for this motion are set forth in the

accompanying memorandum of law.

<div style="margin-left:40%">

WILLIAM M. McSWAIN
United States Attorney

*/s/  Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/  Veronica J. Finkelstein*
LAUREN DeBRUICKER
VERONICA J. FINKELSTEIN
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8492/8598
Email: lauren.debruicker@usdoj.gov
        veronica.finkelstein@usdoj.gov

</div>

Dated:  February 14, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD E. GROFF,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **19-CV-1879** |
| | : | |
| **MEGAN J. BRENNAN,** | : | |
| **POSTMASTER GENERAL,** | : | |
| **UNITED STATES** | : | |
| **POSTAL SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Being Christian does not entitle an employee to an idiosyncratic job offered to no other employee.  Yet that is what the plaintiff, Gerald Groff, demanded of his former employer, the United States Postal Service (the "USPS").  He was a Rural Carrier Associate (an "RCA").  Every RCA had to work on Sundays.  This was simply part of the job.  USPS offered him accommodations, but when the USPS failed to give him a blanket exemption from this job requirement, he quit.  He was entitled to do so but that does not mean he was the victim of religious discrimination.  The facts here are largely undisputed.  Those that are truly material and not in dispute entitle the defendant, Megan J. Brennan, Postmaster General of the USPS, to summary judgment in her favor.

**I.      FACTS AND PROCEDURAL HISTORY**

       The plaintiff's employment history, including his selection as an RCA

       The plaintiff is a Christian.  Joint Statement of Material Facts ("JF") ¶2.  For a majority of his adult life, he worked for religious organizations, often in a volunteer, unpaid capacity.

Def.'s Stmt. of material Facts ("DF") ¶¶ 6-11.  In 2010, he applied for a part-time, flexible position with the USPS.  DF ¶12.  He was hired on November 20, 2010 and worked for less than a year before resigning in 2011.  *Id.*  Six months later, he changed his mind, re-applied, and was re-hired.  DF ¶13.  He became a Rural Carrier Associate (an "RCA") on July 12, 2012.  *Id.*

RCAs are responsible for the safe and efficient delivery and collection of the mail, working part-time to cover for regular carriers.  JF ¶5.  Work hours vary depending on office and routes.  DF ¶15.  As flexible, relief carriers, all RCAs must be willing to work weekends and holidays.  *Id.*  They have no contractual right to specific days off.  JF ¶45.

RCAs deliver mail on main roads and back roads.  DF ¶16.  They work in all weather and encounter snow, ice, rain, dust, and mud.  *Id.*  They can be out late at night, in the dark.  *Id.*  When delivering packages, RCAs sometimes have to leave their car and walk to a customer's door.  *Id.*

RCAs are neither guaranteed specific hours nor set schedules.  DF ¶17.  They do not generally earn "leave" or time off.  *Id.*  They are scheduled on an as-needed basis.  *Id.*  Beginning in 2016, all RCAs had to be available to work on Sundays.  DF ¶21.

<u>Under financial stress, the USPS contracts for Sunday Amazon.com delivery</u>

For the last decade, the USPS's finances have been steadily worsening.  DF ¶18.  In 2012, the USPS lost a record $16 billion.  *Id.*  As a result, in an effort to remain profitable, in 2013, the USPS agreed to deliver Amazon packages on Sundays.  DF ¶19.  Sunday Amazon delivery was implemented on a rolling basis.  *Id.*  It was critically important to the USPS that it be successful.  DF ¶20.

In 2015, the plaintiff was working in the Quarryville station when Sunday Amazon delivery rolled out to that station.  DF ¶26.  The Quarryville station is a relatively large station

with roughly a dozen carriers and 10 mail routes.  DF ¶17.  The plaintiff negotiated with his

then-postmaster, Patricia Wright, to be exempt from working on Sundays.  DF ¶28.  In 2015,

such a decision was within the discretion of the postmaster and the Quarryville station's large

number of carriers afforded Postmaster Wright some flexibility.[1]  DF ¶29.  In 2016, however,

Postmaster Wright informed the plaintiff that she could no longer exempt him going forward.

DF ¶30.  The plaintiff filed no grievance or employment discrimination complaint.  DF ¶31.

Instead he voluntarily transferred to the Holtwood station effective August 20, 2016.  *Id.*

     The Holtwood station was a much smaller operation than the Quarryville station.  DF

¶32.  It had only 3 full-time carriers and 3 relief carriers to cover 3 mail routes.  *Id.*  At the time

the plaintiff transferred to the Holtwood station there was no Sunday delivery.  JF ¶15.  No one,

including Holtwood Postmaster Brian Hess, ever promised the plaintiff that either he or the

station would continue to be excluded from Sunday Amazon delivery.  *Id.*

     Postmaster Hess was aware, however, that the plaintiff had religious objections to

working on Sunday.  JF ¶14.  Postmaster Hess was also a Christian who himself attended church

on Sundays.  DF ¶38.  When he first transferred, the plaintiff got along well with Postmaster

Hess.[2]  JF ¶17.

---

[1]    The plaintiff may argue that since Postmaster Wright accommodated him prior to 2016, he could have been accommodated thereafter.  He ignores a key event—the execution of a collectively bargained agreement in May 2016 that governed Sunday work for RCAs.  He will likely reference deposition testimony about religious accommodations offered in New York City to non-RCAs, also prior to 2016.  Not only by virtue of job classification and location, but also due to the timing, none of these other employees is similarly situated to the plaintiff.  If anything, these events show an overall atmosphere at the USPS whereby religious needs were accommodated when possible - an atmosphere of inclusion rather than animosity.

[2]    Postmaster Hess knew the plaintiff's religion from the moment he transferred to the station in 2016.  Yet, according to the plaintiff, the discrimination only began in 2017.  The plaintiff cannot explain why, if Postmaster Hess resented the plaintiff's Christianity, Postmaster Hess did nothing to display this animosity for a year.

<u>The process for Sunday Amazon delivery is formalized</u>

As Sunday Amazon delivery rolled out nationwide, the USPS formalized the process. DF ¶21.  On May 24, 2016, the National Rural Letter Carriers' Association, the union representing RCAs, entered into an agreement with the USPS known as a Memorandum of Understanding (the "MOU").  JF ¶8.  The MOU set forth the formal process for scheduling employees for Sunday Amazon delivery.  DF ¶22.

Pursuant to the MOU, the USPS created two lists of part-time flexible carriers.  JF ¶9. Every part-time flexible carrier was asked whether he or she wanted to work every Sunday and holiday ("volunteers") instead of being on a regular rotation ("non-volunteers").  *Id.*  On any given Sunday or holiday, management determined how many carriers needed to be scheduled given the expected mail volume.  JF ¶10.  Management first scheduled assistant rural carriers ("ARCs"), then scheduled volunteer RCAs, then scheduled non-volunteer RCAs as needed, on a rotating basis.  *Id.*  As such, pursuant to the MOU, all RCAs had to be available to work on Sundays.  JF ¶40.  This was part of their job.  DF ¶21.  Although the MOU delineated some circumstances in which a RCA could be bypassed in the rotation, the circumstances were limited. JF ¶11.  There was no stated exception for an RCA who wanted every Sunday off due to a religious objection to working on Sundays.  *Id.*

<u>Sunday Amazon delivery rolls out to the Holtwood station</u>

Sunday Amazon delivery rolled out to the Holtwood station in March 2017.  JF ¶16, 18. In response the plaintiff told Postmaster Hess he would resign.  DF ¶40.  Postmaster Hess respected the plaintiff's religious convictions and told him he was sorry to lose a good employee, *id.* - inconsistent with any alleged animosity towards the plaintiff based on his Christian faith.

4

Sunday Amazon delivery was handled differently during "peak" (November to January) and "non-peak" seasons.  JF ¶42.  During non-peak season, RCAs and other part-time flexible carriers from across the district reported to the Lancaster Carrier Annex.  JF ¶43.  Management from the Annex created the schedule and directed the carriers as they delivered from this central location in the district.  *Id.*  During peak season, each station scheduled its own carriers who reported to and delivered packages from that station.  JF ¶44.

### The USPS's efforts to accommodate the plaintiff

Holtwood carriers were first scheduled for Sunday Amazon delivery on March 19, 2017. JF ¶16.  The plaintiff was scheduled to work that day.  *Id.*  This was the first of many Sundays when he was scheduled.  JF ¶23.  In total, between March 19, 2017, when Sunday Amazon delivery came to Holtwood, and January 18, 2019, when he resigned, the plaintiff was scheduled for a total of at least 24 total Sundays.  *Id.*  He never worked a single one.  JF ¶21.

Recognizing the conflict between the plaintiff's stated religious beliefs and the requirements of the RCA position, the USPS offered several options to the plaintiff.  JF ¶21. First, if he was scheduled on a Sunday, he could take another day off that week as a day of worship.  JF ¶21, 31.  Second, if he was scheduled on a Sunday, he could come in later that day, after attending church.  *Id.*  Third, management would contact other stations to find coverage for the plaintiff on the days when he was scheduled.  *Id.*  Fourth, within reason, the plaintiff could find his own coverage for when he was scheduled.  ¶43(d).  If coverage was found, the plaintiff would be excused from working on that particular Sunday.  JF ¶21, 31

The plaintiff rejected these offers.  DF ¶46.  He did not quit.  He did not seek another position that did not require Sunday work. Instead he demanded to be completely excused from working on Sundays.  *Id.*  In other words, he wanted the USPS to create an idiosyncratic position

for him that was different from every other RCA position.  All RCA positions required Sunday work.  JF ¶40.  The plaintiff knew this beginning by at least May 2016.  DF ¶46.

Although the plaintiff had refused all the accommodations USPS offered, Postmaster Hess nonetheless faithfully looked for substitutes for the plaintiff each week that he was scheduled.  DF ¶48.  Postmaster Hess was often successful but it was not easy.  DF ¶46.  The plaintiff was not the only RCA who objected to Sunday work.  Many RCAs resigned rather than work on Sundays, and it was hard to get the remaining carriers to work.  DF ¶50.  Seeking substitutes was time consuming.  DF ¶48.

Postmaster Hess convinced several RCAs to cover for the plaintiff.  DF ¶58.  RCA Justin Tekely, who was Christian and wanted the day off to attend church, nonetheless covered Sundays for the plaintiff during most of the entirety of the 2017 peak season.  DF ¶59.  RCA Valerie Gustavsen covered for the plaintiff during the entirety of the 2018 peak season.  *Id.*  Postmaster Hess also arranged for RCA Lori Lewis to cover for the plaintiff.  *Id.*  On some Sundays, in violation of union rules, Postmaster Hess personally delivered packages.  *Id.*

<u>The USPS's progressive discipline system</u>

The plaintiff understood that, like any other employee, he could be disciplined for absenteeism.  DF ¶63.  The USPS utilizes a "progressive" system of discipline: first a letter of warning; followed by a seven-day suspension; followed by a 14-day suspension.  JF ¶25.  "Paper suspensions," like the ones issued to the plaintiff, do not cause an employee to lose work or pay.  JF ¶26.  Generally, an employee may be disciplined for every two to three absences.  DF ¶68.

Many RCAs objected to working on Sundays.  DF ¶50.  In fact, following the rollout of Sunday Amazon delivery, many quit.  *Id.*  Others simply failed to report when scheduled.  DF

¶50.  RCAs who were absent when scheduled, regardless of reason, were disciplined.  DF ¶64. There is no evidence to suggest any were treated differently than the plaintiff.  *Id.*

<div align="center">The plaintiff is issued a letter of warning for his absenteeism</div>

The plaintiff was scheduled to report to work on the following Sundays:  March 19, 2017; April 2, 2017; April 16, 2017; April 23, 2017; May 7, 2017; and May 21, 2017.  JF ¶23.  He was absent.  JF ¶21.

He was issued a letter of warning dated June 9, 2017.  DF ¶70.  Although he had missed six Sundays, he was disciplined only for his absences on April 16, 2017, April 23, 2017, and May 7 2017.  *Id.*  Although he had three absences as of April 16, 2017, he was not issued a letter of warning for nearly two more months.  JF ¶23; DF ¶70.  By that time, he had accrued three more unexcused absences for which he was never disciplined.  *Id.*

<div align="center">The plaintiff files his first EEO complaint</div>

On September 26, 2017, the plaintiff, represented by counsel, filed his first EEO complaint alleging religious discrimination because he had been issued the letter of warning.  DF ¶95.  He named as alleged discriminators management at the Lancaster Carrier Annex.  *Id.*  The only incidents of alleged discrimination described in the plaintiff's first EEO complaint are: (1) management's failure to exempt him from Sunday work; and (2) the letter of warning.  *Id.*  No discrimination was found.  DF ¶96.

<div align="center">The plaintiff is issued a seven-day paper suspension for his absenteeism</div>

The plaintiff was then scheduled to work on the following Sundays:  June 11, 2017; July 2, 2017; July 23, 2017; August 6, 2017; August 28, 2017; September 17, 2017; October 1, 2017; October 15, 2017; December 3, 2017; and December 17, 2017.  JF ¶23.  He was absent.  JF ¶24.

The plaintiff was issued a seven-day paper suspension dated January 2, 2018.  JF ¶33. Although he had missed ten more Sundays, he was disciplined only for his absences on December 3, 2017 and December 17, 2017.  *Id.*  Although he had had three more unexcused absences following the letter of warning by July 23, 2017, he was not issued a seven-day paper suspension for over five more months.  JF ¶33.  By that time, he had accrued ten unexcused absences since the letter of warning for which he was not disciplined.  JF ¶23; DF ¶105.

<u>The plaintiff files his second EEO complaint</u>

On April 19, 2018, the plaintiff, represented by counsel, filed his second EEO complaint alleging religious discrimination because he had been issued the seven-day paper suspension. DF ¶97.  He named only Postmaster Hess as alleged discriminator.  *Id.*  The only incidents of alleged discrimination he described in this second EEO complaint are: (1) management's continued failure to exempt him from Sunday work; and (2) the seven-day paper suspension.  *Id.*

During the investigation of the second EEO complaint, the plaintiff raised two additional grievances.  DF 98.  First, he claimed that Postmaster Hess was treating the other two Holtwood Station RCAs, Justin Tekely  and Sheila Moyer, "favorably" because they were willing to work on Sundays.  DF ¶99.  He claimed that Postmaster Hess helped the other RCAs more often.  He could only recall one occasion when Postmaster Hess helped the other RCAs.  *Id.*  RCAs Tekely and Moyer were newer employees at the time, they had more mail to deliver, they were overwhelmed, they needed more help, and (even with the help) they ended up working later than the plaintiff.  DF ¶¶100-102.

Second, the plaintiff also claimed that Postmaster Hess "mocked" him on one occasion. DF ¶103.  Postmaster Hess teased the plaintiff about the photo on the plaintiff's employee identification badge.  *Id.*  The plaintiff never told Postmaster Hess that he was upset.  *Id.*  It was

8

not unusual for the employees at the Holtwood station to tease each other.  DF ¶104.  Even the plaintiff posted a picture of another of his co-workers as a joke.  *Id.*  Text messages between the plaintiff and Postmaster Hess demonstrate a friendly camaraderie.  *Id.*  Again, no discrimination was found.  DF ¶105.

<u>The plaintiff is issued a fourteen-day paper suspension for his absenteeism</u>

The plaintiff was then scheduled to work on the following Sundays: January 14, 2018; March 4, 2018, March 18, 2018; March 25, 2018; April 1, 2018; April 8, 2018; April 22, 2018; and May 13, 2018.  JF ¶23.  He was absent.  JF ¶24.  The plaintiff was issued afourteen4-day paper suspension dated October 5, 2018.  JF ¶36.  Although he had missed 8 more Sundays since the seven-day paper suspension, he was disciplined only for his absences on June 17, 2018, August 12, 2018, and August 26, 2018.  JF ¶36

Although the plaintiff had had three more unexcused absences as of March 18, 2018, he was not issued a fourteen-day paper suspension for over six more months.  JF ¶¶23; 36.  By that time he had accrued eight more unexcused absences since the seven-day suspension.  JF ¶23.

<u>The plaintiff's absenteeism negatively impacts the USPS</u>

Delivering Sunday Amazon delivery created a lot of work.  DF ¶49.  It was difficult to get carriers to work.  DF ¶50.  Without sufficient carriers, it sometimes took fifteen or sixteen hours to get the packages delivered.  *Id.*  This meant long days and dangerous conditions for the carriers delivering in the dark.  *Id.*

The plaintiff's absence complicated the scheduling and planning processes.  DF ¶52.  Postmaster Hess had to spend time calling or emailing other stations to find coverage for the plaintiff.  DF ¶48.

Skipping the plaintiff in the rotation meant other carriers had to work more Sundays than they otherwise would have had to work. DF ¶54. When the plaintiff was absent, other carriers were upset. DF ¶51. They complained. *Id.* There was even talk of a boycott among the RCAs. *Id.* One filed a grievance. *Id.* As a result of this grievance, the union clarified that the USPS was not to exempt the plaintiff from Sunday work because this would violate the MOU. *Id.* Another carrier simply resigned. *Id.*

The plaintiff's absenteeism caused overtime. DF ¶55. Given how few RCAs were assigned to the Holtwood station, Postmaster Hess had limited options during peak-season. DF ¶62. Towards the end of the plaintiff's tenure, the station was down to two RCAs: the plaintiff and RCA Tekely. *Id.* Because the plaintiff refused to work on Sundays, RCA Tekely had to work every Sunday. *Id.* RCA Tekely transferred from the Holtwood station because of the plaintiff. DF ¶51. Postmaster Hess sought volunteers from other post offices to cover the plaintiff's absence. DF ¶ 48. Sometimes when the plaintiff was absent Postmaster Hess delivered packages himself, violating a collectively bargained agreement. DF ¶56.

<u>After resigning, the plaintiff files his third EEO complaint</u>

The plaintiff ultimately resigned on January 18, 2019. JF ¶38. On April 30, 2019, the plaintiff, represented by counsel, filed his third EEO complaint alleging religious discrimination because he claimed he had been constructively discharged. DF ¶106. He amended the complaint to also challenge the fourteen-day paper suspension. *Id.* Again, the only alleged discriminator was Postmaster Hess. *Id.*

On May 1, 2019, the plaintiff initiated this civil court action. (Doc. No. 1.) He filed the operative amended complaint on May 30, 2019. (Doc. No. 7.) The plaintiff states two claims. In Count I, the plaintiff alleges religious discrimination. (Doc. No. 7, ¶¶ 46-56.) In Count II, the

plaintiff alleges a failure to accommodate his religious observance.  (Doc. No. 7, ¶¶ 57-66.)  Fact
discovery closed on January 17, 2020.  (Doc. No. 17.)

## II.    <u>STANDARD OF REVIEW</u>

The Federal Rules of Civil Procedure permit summary judgment when "there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a).  A fact is material if it can affect the outcome of the case under the
governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant is
entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has the burden of proof." *Celotex
Corp v. Catrett*, 477 U.S. 317, 323 (1986).  The facts are viewed in the light most favorable to
the non-moving party and all reasonable inferences are resolved in that party's favor.
*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir.
2006).

Metaphysical doubt is insufficient to oppose a motion for summary judgment.
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Unsupported
allegations are insufficient. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988).
Subjective beliefs are insufficient. *Id.*  The non-moving party must present more than a mere
scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-
movant. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

Moreover, the "mere existence of some alleged factual dispute between the parties will
not defeat an otherwise properly supported motion for summary judgment; the requirement is
that there be no genuine issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis added).
A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact

"might affect the outcome of the suit under the governing law." *Id*. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is agreement on the facts but disagreement on the law, the Court may resolve that legal disagreement on motion. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999)

III.   **ARGUMENT**

USPS made many efforts to accommodate the plaintiff's religious beliefs. Still, being Christian does not entitle an employee to an idiosyncratic job offered to no other employee. That is what the plaintiff demanded of the USPS. The USPS's failure to acquiesce does not constitute religious discrimination.

This is the unusual employment discrimination case that raises a purely legal question, where the parties generally agree on the truly <u>material</u> facts:[3]

- The plaintiff was an RCA;

- All RCAs had to work on Sundays pursuant to the MOU, a collectively bargained agreement;

- The plaintiff asked to be exempt from Sunday work for religious observance;

- The USPS offered to let the plaintiff take other days off for religious observance, report to work after religious services, or swap shifts with other employees, and attempted to find others to cover for the plaintiff on the Sundays he was scheduled;

---

[3]      Undoubtedly the plaintiff will identify other facts but these other facts are truly immaterial to the legal issues in this motion. The mere fact that plaintiff argues about other facts does not mean summary judgment is unwarranted. *See Anderson*, 477 U.S. at 247-48. This Court has so noted. *See, e.g., Rifai v. CMS Med. Care Corp.*, No. 15-1395, 2017 U.S. Dist. LEXIS 153680, at *2 (E.D. Pa. Sep. 21, 2017) (Schmehl, J.) (noting that a motion for summary judgment will not be defeated by the mere existence of some disputed facts").

- Exempting the plaintiff from Sunday work would have detrimentally impacted the USPS;[4]

- The plaintiff was absent from at least twenty four  scheduled Sunday shifts;

- He was issued escalating discipline in accordance with USPS disciplinary procedures;

- This discipline never caused him to lose hours or pay;

- He described two (and only two) incidents where Postmaster Hess (and only Postmaster Hess) allegedly treated him unfairly;[5] and

- He resigned.

Any remaining facts provide context, but they are not legally determinative, and while the plaintiff may dispute the characterization or wording of the above facts, he cannot truly dispute the facts themselves.  As a matter of law, these facts entitle the USPS to summary judgment in its favor, as explained herein.

---

[4]     The plaintiff may claim that he disputes this fact.  He cannot.  As argued in Section III.B.2., the USPS need only show a *de minimis* impact.  Moreover, the plaintiff admitted, under oath, that he does not know anything about how his absence did impact or would impact operations.  DF ¶107.  He is therefore estopped from disputing the evidence of operational impacts proffered by the USPS.  *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).  He may not want to admit undue hardship is uncontested, but it is.

[5]     After nearly seven hours of deposition questioning, after a break to consult with his attorneys, the plaintiff suddenly recalled a few other incidents of alleged disfavored treatment by Postmaster Hess.  They are not properly before the Court because the plaintiff failed to raise these incidents administratively.  Before bringing suit under Title VII in federal court, a plaintiff must first file pursue administrative remedies.  *See Hicks v. ABT Assocs. Inc.*, 572 F.2d 960, 963 (3d Cir. 1978).  The parameters of the civil action in the district court are defined by the scope of the administrative claims and investigation.  *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).  These incidents were never raised administratively and are, therefore, not part of this litigation.  The same is true of any alleged mistreatment in 2015 by a different postmaster, which again the plaintiff failed to raise administratively.  Even reading the plaintiff's EEO claims as broadly as is reasonable, the only incidents he raised are: (1) the failure to exempt him from all Sunday work; (2) the letter of warning; (3) the 7-day paper suspension; (4) the day Postmaster Hess helped the other RCAs deliver mail; (5) the day Postmaster Hess teased the plaintiff about his badge photo; (6) the 14-day paper suspension; and (7) his construction discharge.  This Court should consider no other alleged instances of discrimination.

Title VII protects employees from adverse employment actions on the basis of religion. Under Title VII, it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a).  An employee may assert two different theories of religious discrimination: disparate treatment and failure to accommodate.  *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001).  Plaintiff raises both theories here.  Unfortunately for the plaintiff, the aforementioned facts defeat both claims.  The USPS therefore is entitled to summary judgment.

**A.   Summary judgment should be granted for the USPS on Count I.**

Title VII religious disparate treatment claims are governed by a three-part, burden-shifting framework.  *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973); *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 133-34 (3d Cir. 1986).  First, the plaintiff must prove a *prima facie* case of discrimination.  *See Abramson,* 260 F.3d at 281.  If he does, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory explanation for its action.  *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-319 (3d Cir. 2000).  If the employer does, the plaintiff must then demonstrate that the employer's explanation is mere pretext for discrimination.  *Id.* at 804.  Here, the plaintiff cannot establish a *prima facie* case.  Even if he could, the USPS has articulated a legitimate, nondiscriminatory explanation that the plaintiff cannot rebut.

**1.   The plaintiff cannot establish a *prima facie* case of religious discrimination.**

To establish a *prima facie* case of religious discrimination under Title VII, a plaintiff must establish that he:  (1) is a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) experienced detrimental treatment giving rise to an inference of discrimination.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002);

14

*Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999). The USPS concedes that the plaintiff can establish the first two elements. He cannot, however, establish the remaining two.

<div align="center">

**a.      Plaintiff did not experience an adverse action.**

</div>

An action is only adverse if it tangibly affects the terms and conditions of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). This requires a significant action like hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Suders v. Easton*, 325 F.3d 432, 434 (3d Cir. 2003).

The actions alleged by the plaintiff fall into three categories on a spectrum of significance. On one end of the spectrum are the incidents of alleged favoritism and teasing. These two incidents, which occurred over a span of two years, are sufficiently isolated and benign that they cannot constitute adverse employment actions as a matter of law. *Faragher v. Boca Raton*, 524 U.S. 775, 788, (1998); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 155 (3d Cir. 1999).

On the other end of the spectrum is the plaintiff's alleged constructive discharge. If he was constructively discharged, that could constitute an adverse action. But he wasn't. He quit.

Constructive discharge requires discriminatory conditions "so intolerable that a reasonable person would be forced to resign." *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887 (3d Cir. 1984); *c.f. Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 168 (3d Cir. 2001) (holding that there was no grounds for a finding of constructive discharge because the employer neither threatened to fire the employee nor encouraged her to resign). This is an objective, not subjective standard. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973 (3d Cir. 1998).

Here, no reasonable employee would expect to have been terminated in this case. The USPS disciplined the plaintiff only a handful of times over a two year period where he was absent twenty four (24) times. DF 57. He lost no hours or pay. DF ¶69. He was never notified

he would be fired.  Nor did he know of any employee who had been fired for absenteeism.  DF ¶65.  The record reveals lenient, not harsh discipline.

In the middle of the spectrum is the paper discipline plaintiff received.  In the abstract, a letter of warning and two suspensions may sound adverse.  These were suspensions on name only, however.  DF ¶69.  *See Kant v. Seton Hall Univ.*, 289 F. App'x 564, 567 n.6 (3d Cir. 2008); *Petro-Ryder v. Pittman*, No. 15-2908, 2015 U.S. Dist. LEXIS 166061, at *20-21 (E.D. Pa. Dec. 11, 2015) (holding that a letter of warning was insufficiently adverse in a discrimination case).  A paper suspension is little more than a reprimand and reprimands alone do not constitute adverse employment actions.  *See Ming Wei v. Pennsylvania*, No. 19-1705, 2020 U.S. App. LEXIS 303, at *8 (3d Cir. Jan. 7, 2020); *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).  This is especially true where, as here, the USPS was generally lenient and did not issue a reprimand every time it had an opportunity to.

Because the plaintiff can show no adverse action, he cannot meet his burden to establish a *prima facie case* of discrimination.

###     b.      Plaintiff cannot prove that any alleged action was motivated by anti-religious animus.

A plaintiff must show some "causal nexus" between his protected status and an employment action.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  The connection must be established by evidence, not by mere speculation.  *Iadimarco v. Runyon*, 190 F.3d 151, 165-66 (3d Cir. 1999); *see also Stevenson v. Great Valley Sch. Dist.*, No. 15-5933, 2019 U.S. Dist. LEXIS 8073, at *26-27 (E.D. Pa. Jan. 16, 2019) (Schmehl, J.)

Generally, a plaintiff identifies similarly-situated employees outside the plaintiff's protected class who received preferential treatment.  *See Jordan v. SEPTA*, No. 10-3470, 2012 U.S. Dist. LEXIS 145644, at *23-24 (E.D. Pa. Oct. 10, 2012).  The plaintiff cannot do so here.

The undisputed evidence of record is that all employees who were absent for Sunday Amazon delivery were disciplined.[6]  DF ¶64.

Where a plaintiff cannot point to comparators, he may instead point to circumstances that suggest discrimination.  *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) (citing *Jones*, 198 F.3d at 411); *Parsia v. Allied Tube & Conduit Corp.*, No. 7-CV-2436, 2009 U.S. Dist. LEXIS 23392, at *11-12 (E.D. Pa. Mar. 19, 2009).

Stray remarks are not generally enough to demonstrate animus.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992); *Ramirez v. Palmer Twp.*, 292 F. Supp. 3d 609, 624 (E.D. Pa. 2018) (Schmehl, J.).  He must present *evidence* contradicting the *core facts* put forward by defendant as the legitimate reason for its decision.  *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (emphasis added).  Only where the employer's proffered explanation is truly "weak" and "implausible" should the court discredit the employer's explanation.  *See, e.g., Rifai*, 2017 U.S. Dist. LEXIS at *13-14 (discrediting the employer's explanation that it fired an employee for sending a threatening letter when the letter was plainly benign).

The record here is devoid of any evidence that the plaintiff's Christianity was viewed negatively.  Even the plaintiff himself concedes neither Postmaster Hess nor anyone else in management ever made a negative comment about the plaintiff's religion.  DF ¶85.  The primary alleged discriminator—Postmaster Hess—was Christian like the plaintiff.  DF ¶92.  Nor is there evidence of an anti-Christian sentiment in the workplace.  To the contrary, the USPS allowed employees to report late in Sundays after attending church.  JF ¶22(b).

---

[6]    This plaintiff cannot dispute this fact.  He admitted under oath that he did not know how other employees were treated when they failed to report to work.  DF ¶65.

The USPS was in difficult financial circumstances and it needed Amazon Sunday delivery to succeed.  That meant having "all hands on deck" on Sundays.  Understandably, employees of all faiths were reticent to give up their weekends.  As a result, the USPS took absenteeism seriously—enforcing its long-established and well-articulated policies requiring that scheduled employees show up for their shifts.[7]

Management understood the plaintiff's request and respected his convictions.  DF ¶40, 44.  But convictions did not excuse his absences.  When he was absent, he was disciplined.  It had nothing to do with religion.  No evidence can refute this fact because it is the truth.  Because the plaintiff can show no causation, he cannot establish a *prima facie* case of discrimination.

The plaintiff has failed to meet two of the four elements of a *prima facie* case of religious discrimination.  On this basis, summary judgment should be granted for the USPS on Count I of the Amended Complaint.

### 2.  **Even if the plaintiff can establish a *prima facie* case, the USPS has articulated a legitimate, nondiscriminatory explanation.**

If the plaintiff satisfies his *prima facie* burden, the burden shifts to the USPS "to articulate some legitimate, nondiscriminatory reason" for its action.  *McDonnell Douglas*, 411 U.S. at 802; *see also Saunders v. Apothaker & Assocs.*, 556 F. App'x 98, 101 (3d Cir. 2014).  This is a low burden.  *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 762 (W.D. Pa. 2010).  The employer need not convince the court of its actual motivation.  *Tex. Dep't of Cmty. Affairs v.*

---

[7]     The Court does not sit as a "super-personnel department" charged with reexamining an entity's business decisions on a post hoc basis.  Even if an entity's business decisions are unwise, the Court does not interfere.  *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995); *Bloch v. Mack Trucks, Inc.*, 240 F. Supp. 3d 365, 374 (E.D. Pa. 2017) (Schmehl, J.).  Perhaps it would have been wise for the USPS to schedule extra employees in lieu of scheduling the plaintiff—but this Court cannot second-guess the USPS's decisions.  It simply looks for animus and there is none here.

*Burdine*, 450 U.S. 248, 254 (1981). The employer need only proffer an explanation that, if true, would be non-discriminatory. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

Here, the non-discriminatory explanation is obvious—the USPS was in serious financial difficulty, needed Sunday Amazon delivery to be successful, and therefore needed its RCAs to be in attendance. DF ¶¶18-22, 49-50. The record is replete with evidence of the challenges of Sunday Amazon delivery—and how these challenges were compounded by the plaintiff's absence. DF ¶¶51-56. Not only is this reason obvious and non-discriminatory—it is supported by the evidence of record. All of the discipline issued to the plaintiff cites these neutral attendance policies. All the evidence is that employees were treated fairly. The attendance policies were enforced against all absent RCAs irrespective of the reason for the absence. DF ¶64. On this basis, summary judgment should be granted for the USPS on Count I of the Amended Complaint.

### 3.  **The plaintiff cannot disprove the USPS's explanation as pretext.**

Once the employer comes forward with a legitimate, nondiscriminatory explanation, the plaintiff must demonstrate by a preponderance of the evidence that this reason was not the actual reason, but rather a pretext for discrimination. *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n.5 (3d Cir. 1998). The plaintiff must provide evidence either that the decision maker was motivated by animus or that shows the proffered explanation to be fabricated. *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006).

Here, save for his own speculation, there is no evidence to support the plaintiff's claim that he was treated differently because he was Christian. The plaintiff concedes that no one, not even Postmaster Hess, ever made a negative comment about the plaintiff's religion. DF ¶66. Most of the decision-makers were Christian. DF ¶¶92-93. One was an ordained minister. DF ¶44. They all deny anti-religious animus. DF ¶¶ 88-91. To suggest an animus on the part of

these individuals is nothing more than speculation.  The plaintiff's evidence is insufficient to survive summary judgment.[8]

Nor is there any evidence that the proffered explanation is fabricated.  The overwhelming evidence is that Sunday Amazon delivery was challenging.  DF ¶49.  The USPS struggled to ensure it had sufficient RCAs in attendance.  DF ¶50.  Neutral attendance policies were used to ensure the attendance of all RCAs—not merely the plaintiff.  DF ¶64.

The plaintiff cannot show pretext.  On this basis, summary judgment should be granted for the USPS on Count I of the Amended Complaint.

### B. **Summary judgment should be granted for the USPS on Count II.**

Title VII failure to accommodate claims are also governed by a burden-shifting framework.  *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010).  Under this framework, the plaintiff again has the initial burden of proving a *prima facie* case.  *Id.*  If he does, the burden then shifts to the employer to show either: (1) it made a good-faith effort to reasonably accommodate the plaintiff's religious belief, or (2) that such an accommodation would cause an undue hardship to the employer.  Assuming the plaintiff can establish the elements of a *prima facie* disparate treatment claim,[9] , he still cannot prevail.  An employer like the USPS has two absolute defenses to such a claim and both are evident here.

_____

[8]      The plaintiff may argue that on one phone call relating to Sunday Amazon delivery, someone made a stray comment that management was going to "get" the plaintiff.  That management was out to get him was belied by the fact that the USPS never issued discipline as quickly or as harshly as it could have.  Moreover, even if someone in management was indeed out to get the plaintiff—that would not be sufficient for the plaintiff to meet his burden.  He must prove, and he cannot, that this anonymous person was out to get the plaintiff *because he is Christian*.  He has no such evidence and therefore cannot prove a religious animus.

[9]      The first *prima facie* element the plaintiff must establish is that he holds a sincere religious belief that conflicts with a job requirement.  *GEO Grp., Inc.*, 616 F.3d at 271.  Based on

1.  **The USPS made a good faith effort to reasonably accommodate the plaintiff's religious beliefs.**

Title VII does not require an employer offer every accommodation, it need only offer a reasonable accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70. The accommodation need not wholly eliminate the conflict between work and religion.[10] *See Id.*

An acceptable accommodation may consist of a combination of measures which, taken together, are reasonable. *Miller*, 351 F. Supp. at 779. Allowing shift swapping has been deemed a reasonable accommodation. *Id.* This is especially true where management attempts to facilitate swapping. *See Krushinski v. Roadway Express, Inc.*, 626 F. Supp. 472, 474-75 (M.D. Pa. 1985).

---

his own testimony, it is debatable whether working on Sundays was incompatible with the plaintiff's religion. DF ¶¶2-4.

[10]     A circuit split currently exists as to whether an accommodation need wholly eliminate the conflict to be reasonable. *Compare EEOC v. Firestone Fibers & Textiles Co.,* 515 F.3d 307 (4th Cir. 2008); *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1032-33 (8th Cir. 2008) *with Morrisette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1322 (11th Cir. 2007); *Baker v. Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006); *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993).

The issue has never been squarely decided in this circuit. In *Geo Grp.*, Inc., the court sidestepped this issue because it decided in favor of the employer on the basis of undue hardship. 616 F.3d at 271-77. In *Shelton v. Univ. of Med. & Dentistry*, the court did not reach this legal question because, as a factual matter, the employee failed to prove that there would be a conflict. 223 F.3d 220, 225 (3d Cir. 2000). The court, therefore, never had to answer the legal question. In the absence of binding authority on this issue, district courts reaching this issue uniformly hold that an accommodation need not wholly eliminate a conflict to be reasonable. *See Miller v. Port Auth. of N.Y. & N.J.*, 351 F. Supp. 3d 762, 778 (D.N.J. 2018); *E.E.O.C. v. Aldi, Inc.*, No. 06-01210, 2008 U.S. Dist. LEXIS 25206, at *44 (W.D. Pa. Mar. 28, 2008). One of these cases, *Miller*, was affirmed on appeal just a few months ago, suggesting the court agrees that an accommodation need not wholly resolve the work/religion conflict to be reasonable. *Miller v. Port Auth. of N.Y. & N.J.*, 788 F. App'x 886 (3d Cir. 2019).

Here one of the many offered accommodations (namely shift swapping) did entirely resolve the conflict. So the Court here need not reach this legal question.

An employer need not acquiesce to the specific demand of the employee for its accommodation to be reasonable. *Getz v. Pa., Dep't of Pub. Welfare*, 802 F.2d 72, 74 (3d Cir. 1986); *Prise v. Alderwoods Grp., Inc.*, 657 F. Supp. 2d 564, 601 (W.D. Pa. 2009). Title VII does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated.

The employee, therefore, cannot make an ultimatum, but must cooperate with an employer's in an effort to reach a mutually agreeable accommodation. *Miller*, 351 F. Supp. 3d at 778-79; *Prise*, 657 F. Supp. 2d at 601. If the employer offers a reasonable accommodation, it has met its legal obligation. *See Philbrook*, 479 U.S. at 68.

Here, once the USPS learned that the plaintiff had requested to be excused from Sunday work due to his religious beliefs, the USPS accommodated him in the following four ways:

- If he was scheduled on a Sunday, he could take another day off that week as a day of worship;

- If he was scheduled on a Sunday, he could come in later that day, after attending church;

- Management would contact other stations to find coverage for the plaintiff when he was scheduled. If coverage was found, the plaintiff would be excused from working on that particular Sunday.

- Within reason, the plaintiff could find his own coverage for when he was scheduled. Again, if coverage was found he would be excused on that Sunday.[11]

Of these accommodations, the latter two wholly resolved the plaintiff's conflict between work and religion; if another employee worked on his behalf, either because management arranged a shift swap or because he arranged a shift swap, there would be no conflict.

---

[11] The plaintiff concedes that the first three accommodations were offered. He cannot deny the fourth. He described under oath an occasion where he asked RCA Moyer if she would cover his shifts. (Groff Dep. 263:23-264:6.)

Taken in total, this combination of accommodations was reasonable.  In fact, offering the plaintiff the right to arrange his own shift swapping, standing alone, would have met the legal standard.  That management offered to facilitate shift swapping, and that Postmaster Hess faithfully attempted to find coverage, demonstrates the degree to which the USPS not only met but exceeded its legal obligations.  DF ¶ 48.

The plaintiff rejected these accommodations.  He wanted one thing and one thing only—an idiosyncratic position offered to no other RCA.  He wanted to be exempt from ever having to work on Sundays with no shift swapping.  As a legal matter, the USPS did not have to accommodate his wish.  He was not entitled to make this ultimatum.

As a matter of law, because the USPS offered the plaintiff a reasonable accommodation, summary judgment should be granted in favor of the USPS on Count II.  Under *Miller*, the inquiry ends here.

### 2. **Even if the offered accommodations were not reasonable, the USPS was not required to offer additional ones that would create an undue burden.**

An employer must reasonably accommodate an employee's religious practices unless accommodation would cause an undue hardship.  *TWA v. Hardison*, 432 U.S. 63, 71-72, (1977).  An accommodation that imposes anything more than a *de minimis* cost on the employer causes such a hardship.  *Id.* at 84.

Both economic and non-economic costs matter.  *Id.* at 83; *Webb v. City of Phila.*, 562 F.3d 256, 259-60 (3d Cir. 2009).  Courts have recognized the following economic costs: lost efficiency; and payment of overtime.  *TWA*, 432 U.S. at 84.

Courts have recognized the following non-economic costs:

- Violation of a collective bargaining agreement[12];

- Increasing the difficulty or danger of work for other employees;[13]

- Compelling other employees to work additional undesirable weekend shifts;[14] and

- Requiring more senior employees to work.[15]

Here, the impacts felt by the plaintiff's absenteeism create an undue hardship.  The USPS need only show more than *de minimis* cost.  Here it can show undisputable, significant economic and non-economic hardships.

In terms of economic costs, excluding the plaintiff from Sunday work would have diminished efficiency.  There is evidence it did.  The Holtwood station was a small one with only three RCAs.  DF ¶32.  When the plaintiff did not work on Sundays that meant the other two RCAs had to cover every Sunday during peak season.  DF ¶¶32, 41.  In 2017, there was only one RCA aside from the plaintiff.  DF ¶62.  That other RCA worked every Sunday, got burned out, and transferred.  DF ¶ 51.  This is on top of overtime costs and scheduling inefficiencies caused by the plaintiff's absences.  DF ¶¶52, 55.  Managing Sunday Amazon delivery was challenging enough without these additional complications.  The empirical evidence is that hardships were caused by the plaintiff's absence.  This Court need not speculate as to future hardship.

---

[12]    *Fouche v. N.J. Transit*, 470 F. App'x 96, 96-97 (3d Cir. 2012).

[13]    *See Smith v. Bethlehem Steel Corp.*, No. 87-5340, 1989 U.S. Dist. LEXIS 1432, at *13-15 (E.D. Pa. Feb. 13, 1989).

[14]    *See Aron v. Quest Diagnostics, Inc.*, 2005 U.S. Dist. LEXIS 49245, at *1 (D.N.J. June 30, 2005) *aff'd* 174 Fed. App'x 82, 83 (3d Cir. 2006).  This is especially true where the employer has pre-existing staffing problems and the employee seeking the exclusion from weekend work is a part-time employee whose very job function is to provide relief.  *Smith*, 1989 U.S. Dist. LEXIS 1432, at *13-15.

[15]    *Smith v. United Ref. Co.*, No. 77-71 Erie, 1980 U.S. Dist. LEXIS 9038, at *25-26 (W.D. Pa. Jan. 30, 1980).

24

More importantly, there would be significant non-economic costs.  Excluding the plaintiff from Sunday work was a clear violation of the MOU—a position the union clearly espoused in deciding a grievance filed by another RCA disgruntled over the plaintiff's absenteeism.  DF ¶51.  When Postmaster Hess delivered packages, this violated a collectively bargained agreement as well.  DF ¶56.

The plaintiff was an RCA—a position that requires that an employee be flexible and responsive to the USPS's scheduling needs.  DF ¶14.  When carriers are needed, RCAs are called.  DF ¶17.  When the plaintiff was absent, other RCAs had to work more and longer days, risking their own safety delivering packages in the dark.  DF ¶50.

As a matter of law, because the plaintiff's absence did cause undue hardship and additional accommodations would have caused even more hardship, summary judgment should be granted in favor of the USPS on Count II on this equally dispositive basis.

## IV.   CONCLUSION

The plaintiff's job was to provide relief; instead he demanded it from others. The fact that the plaintiff is Christian did not entitle him to idiosyncratic job offered to no other USPS employee.  Until he resigned, he was an RCA.  Like every other RCA, he had to be available to work on Sundays.  He was neither discriminated against nor denied an accommodation required by law.  The undisputed materials facts entitle the defendant to summary judgment in her favor.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/  Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

25

/s/  Veronica J. Finkelstein
LAUREN DeBRUICKER
VERONICA J. FINKELSTEIN
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8492/8598
Email: lauren.debruicker@usdoj.gov
               veronica.finkelstein@usdoj.gov

Dated:  February 14, 2020

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing

statement of facts, motion for summary judgment, proposed order, and memorandum of law in

support, all of which were electronically filed through the Court's CM/ECF system, to be served

by upon the following via CM/ECF.

David W. Crossett, Esq.
8500 Allentown Pike, Suite 3
Blandon, PA 19510

Randall L. Wenger, Esq.
Jeremy Samek, Esq.
Independence Law Center
23 North Front Street, 2nd Floor
Harrisburg, PA 17101

Alan J. Reinach, Esq.
Church State Council
2686 Townsgate Rd.
Westlake Village, CA 91361

Dated: February 14, 2020

/s/  *Lauren DeBruicker*
LAUREN DeBRUICKER